IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| | ) | CIVIL ACTION NO. 2:25-cv-1516 |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| WENDY'S INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008 (the "ADA"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Michael Salsburg ("Charging Party" or "Salsburg"). This is also an action under the Age Discrimination in Employment Act of 1967, as amended, (the "ADEA"), to correct unlawful employment practices on the basis of age and to provide appropriate relief to the Charging Party. As alleged with greater particularity herein, Defendant violated the ADA and/or the ADEA when it discriminated against the Charging Party.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to

Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action also is authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Ohio, Eastern Division.

<u>PARTIES</u>

3.      Plaintiff, the United States Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      Plaintiff, the United States EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of the Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

5.      At all relevant times, Defendant, Wendy's International, LLC, an Ohio corporation, has continuously been doing business in the state of Ohio, including in Dublin, Ohio, and has continuously had at least 20 employees.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12112(5), (7).

7.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12112(2).

8.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g), and (h).

ADMINISTRATIVE PROCEDURES

9.      More than 30 days prior to the institution of this lawsuit, Michael Salsburg filed a charge with the Commission alleging violations of the ADA and ADEA by Defendant.

10.      On March 19, 2025, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA and ADEA were violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11.      The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12.      On April 28, 2025, the Commission issued to Defendant a Notice of Failure of Conciliation.

13.      All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF CLAIMS

14.      As alleged with more particularity herein, Defendant has engaged in unlawful employment practices in violation of Section 12112 of Title I of the ADA, 42 U.S.C. § 12112.

15.      The Charging Party, Michael Salsburg, is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). The Charging Party has impairments including a diagnosis of ulnar neuropathy, cubital tunnel syndrome, and carpal

3

tunnel syndrome, which substantially limit major bodily functions including the peripheral nervous/neurological and/or musculoskeletal systems and which impair the function of the elbow, wrists and/or hands. The Charging Party also has a record of impairments, as described above and as defined by 42 U.S.C. § 12102 (1)(B), and Defendant regarded the Charging Party as having a disability by subjecting him to adverse employment actions because of actual or perceived impairments as defined by 42 U.S.C. § 12102 (1)(C) through and including § 12102 (3).

16. Defendant violated the ADA when it discriminated against Salsburg on the basis of disability in regard to his discharge, compensation, and other terms and conditions of employment, including by engaging in the below-described acts and omissions:

(a) Salsburg began working for a Wendy's franchise restaurant in 1993.

(b) As of 2022, Defendant employed Salsburg as a District Manager.

(c) As a District Manager, Salsburg worked in an office located in Defendant's corporate headquarters where he reviewed, analyzed, and prepared reports concerning restaurant operations and engaged in other managerial functions. Salsburg also conducted site visits at Wendy's fast food restaurants that were located in the area to which he was the assigned District Manager.

(d) Salsburg could perform the essential job functions of the position he held with or without reasonable accommodation.

(e) In 2022, Defendant became aware that Salsburg had been diagnosed with physical impairments, as described above, and that he would undergo surgery on his hands and wrists.

(f) On or about September 29, 2022, Salsburg went on approved medical leave to have surgery on his left hand and wrist.

(g)     On or about October 24, 2022, Salsburg returned to work from approved medical leave on-time.

(h)     On or about November 17, 2022, Salsburg went on approved medical leave to have surgery on his right hand and wrist.

(i)     After Salsburg had the second surgery Defendant required him to remain on medical leave through at least January, 2023.

(j)     In January 2023, Defendant again required Salsburg to remain on leave and also required him to change his status to short-term disability leave by and through Defendant's disability insurance carrier.

(k)     After Salsburg was placed on short-term disability leave by and through Defendant's disability insurance carrier, his compensation was reduced to a percentage of the salary that he would have earned if Defendant had allowed him to return to work.

(l)     On or about February 21, 2023, Salsburg's healthcare provider issued a release clearing him to return to work at Defendant.

(m)     On or about February 22, 2023, Defendant corresponded with Salsburg, by and through its Human Resources (HR) Manager Mary Schaffer, and the correspondence stated, in part, that Defendant knew Salsburg had been cleared to return to work.

(n)     On or about February 24, 2023, Salsburg sent to Defendant the healthcare provider's release that is described in subparagraph (l), above.

(o)      The healthcare provider's release that is described in subparagraphs (l) and (n) stated that Salsburg was cleared to return to work as a District Manager as long as he did not lift, push, or pull greater than 10 pounds with his right hand, and that the right-hand limitation was expected to last until April, 2023.

5

(p)     On or about February 24, 2023, Defendant's disability insurance carrier sent correspondence to Defendant confirming that the carrier had received "Fitness for Duty" documents from Salsburg's healthcare provider saying that he was released to work as long as he did not lift, push or pull greater than 10 pounds with his right hand.

(q)     Defendant prepared a written description of the District Manager job and that description does not say that lifting, pushing, or pulling were essential job functions nor does it say that it was an essential function of the District Manager job to lift, push, or pull greater than 10 pounds with the right hand.

(r)     Notwithstanding the information, job description, and health care provider release described above, all of which indicated that Salsburg could perform the essential job functions with or without reasonable accommodation, Defendant discriminated against Salsburg on the basis of disability in violation of 42 U.S.C. §§ 12112(a) and (b) when it refused to allow him to return to work for Defendant in any capacity, conditioned Salsburg's employment on his demonstrated ability or capacity to work without any restrictions, required him to remain on leave, did not make reasonable accommodations to the extent any were needed, and/or denied him employment opportunities based on the need to make such accommodations.

(s)     On or about May 26, 2023, Defendant sent Salsburg a termination letter stating that Defendant intended to fire him.

(t)     After Salsburg received the May 26 termination letter, he contacted Defendant to oppose the termination and question why he was being fired given that he had been cleared to work in February, 2023. Salsburg also provided Defendant with additional information including that he had an upcoming medical appointment.

(u)     Shortly thereafter, Defendant required Salsburg to complete medical forms that sought information about his disability. Salsburg complied and gave the completed forms to Defendant on or about June 15, 2023. The completed medical forms stated, in part, that the right-hand limitation was expected to last until July, 2023.

(v)     Notwithstanding the completed medical forms and other information described above, all of which indicated that Salsburg could perform the essential job functions with or without reasonable accommodation, Defendant again discriminated against Salsburg on the basis of disability when it refused to allow him to return to work for Defendant in any capacity, conditioned Salsburg's employment on his demonstrated ability or capacity to work without any restrictions, required him to remain on leave, did not make reasonable accommodations to the extent any were needed, and/or denied him employment opportunities based on the need to make such accommodations.

(w)     On or about June 16, 2023, Defendant issued correspondence stating that it had received the completed medical forms and that because Salsburg still had restrictions Defendant would proceed with firing him.

(x)     On or about June 20, 2023, Defendant sent Salsburg a termination letter stating, in part, that Defendant was firing him because the company "did not receive information indicating that [he was] able to return to work without cleared restrictions…."

(y)     Defendant terminated Salsburg from his employment with Defendant.

17.     As alleged with more particularity herein, Defendant has engaged in unlawful employment practices in violation of the ADEA, 29 U.S.C. § 623(a).

18.     At all material times, Salsburg was over the age of 40 and he was qualified for the job that he held with Defendant.

19.    Defendant violated the ADEA when it discharged and otherwise discriminated against Salsburg because of his age with respect to his compensation, terms, conditions, and/or privileges of employment, as described in Paragraphs 16(a) through (y), and also by engaging in the below-described acts and omissions:

(a)    Defendant treated substantially younger employees more favorably, including but not limited to extending more favorable treatment concerning return-to-work standards and providing accommodations.

(b)    Defendant's records show that it permitted an employee who was substantially younger than Salsburg to return to work with restrictions including restrictions on lifting (no lifting greater than 15 pounds), and that Defendant accommodated the employee's need for limited neck positioning, frequent rest periods, and a reduced work schedule.

(c)    Defendant's records show that the above-referenced manager was permitted to work with restrictions even though medical records provided to Defendant said that the younger manager was experiencing "numbness" in her hands, physical limitations impacting the use of her head and neck, and "profound deconditioning."

(d)    Defendant discriminated against Salsburg because of age when it subjected him to prohibited employment action including, but not limited to, refusing to allow him to work for Defendant in any capacity after he underwent disability related surgery, compelling him to stay on medical leave, denying him reasonable accommodations to the extent any were needed, conditioning Salsburg's employment on his demonstrated ability or capacity to work without any restrictions, and firing Salsburg.

(e)    Various circumstances support an inference of age discrimination

8

including, but not limited to, Defendant's demonstrated preference for workers under the age of 40 during the years surrounding the adverse actions taken against Salsburg and Defendant's more favorable treatment of a substantially younger manager in applying return-to-work standards and providing accommodations.

## COUNT I/ADA VIOLATIONS

20. The EEOC reasserts, as if fully set forth herein, the allegations set forth in Paragraphs 1-3, 5-7, 9-13, and 14-19, above.

21. Defendant discriminated against Salsburg on the basis of disability, and because he is a disabled worker over the age of 40, as described in the above-referenced allegations among others.

22. The effect of the practices described above has been to deprive Salsburg of rights secured to him by the ADA.

23. The unlawful employment practices complained of above were and are intentional.

24. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Salsburg.

## COUNT II/ADEA VIOLATIONS

25. The EEOC reasserts, as if fully set forth herein, the allegations set forth in Paragraphs 1-2, 4-5, 8-13, and 14-19, above.

26. Defendant discriminated against Salsburg because of age, and because he is a disabled worker over the age of 40, as described in the above-referenced allegations among others.

27. Defendant discriminated against Charging Party because of age when it refused to allow him to work for Defendant in any capacity after he underwent disability related surgery, compelled him to stay on medical leave, denied him reasonable accommodations to the extent any

were needed, conditioned Salsburg's employment on his demonstrated ability or capacity to work without any restrictions, and fired Salsburg.

28.     The effect of the practices described above has been to deprive Salsburg of rights secured to him by the ADEA.

29.     Defendant's violations of the ADEA were willful.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, and each of its officers, agents, servants, employees, and all persons in active concert or participation with it, from maintaining or applying policies or practices that violate the ADA and from otherwise violating the Act.

B.     Grant a permanent injunction enjoining Defendant, and each of its officers, agents, servants, employees, and all persons in active concert or participation with it, from maintaining or applying policies or practices that violate the ADEA and from otherwise violating the Act.

C.     Grant a permanent injunction enjoining Defendant, and each of its officers, agents, servants, employees, and all persons in active concert or participation with it, from maintaining a 100% healed standard or practice and/or conditioning employment on an employee's demonstrated ability or capacity to work without any restrictions.

D.     Grant a permanent injunction enjoining Defendant, and each of its officers, agents, servants, employees, and all persons in active concert or participation with it, from compelling employees to remain on leave in lieu of working with a restriction or accommodation, from failing to engage in a good faith interactive process, and from failing to provide reasonable accommodations as required by the ADA.

E.     Grant a permanent injunction enjoining Defendant, and each of its officers, agents,

servants, employees, and all persons in active concert or participation with it, from discriminating against older workers because they are disabled or otherwise entitled to rights or relief secured by the ADA, and from discriminating against disabled workers because of age or because they are entitled to rights or relief secured by the ADEA.

F.      Issue an Order compelling Defendant to revise, reform, and/or eliminate the use of certain forms, processes, and/or practices that contributed or otherwise facilitated ADA and/or ADEA discrimination, compelling Defendant to take action sufficient to prevent future ADA and ADEA violations, compelling Defendant to comply with reporting, monitoring, and other non-monetary provisions with EEOC oversight for a period sufficient to prevent and deter future violations, and otherwise effectuating or promulgating changes that are consistent with the injunctive relief described above.

G.      Order Defendant to make whole the Charging Party by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and/or appropriate front pay.

H.      Order Defendant to make whole the Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

I.      Order Defendant to pay the Charging Party damages for compensatory harm under the ADA, in amounts to be determined at trial.

J.      Order Defendant to pay the Charging Party punitive damages for its malicious and reckless conduct under the ADA, in amounts to be determined at trial.

K.      Order Defendant to pay liquidated damages under the ADEA, in amounts to be determined at trial.

L.      Grant such further relief as the Court deems necessary and proper in the public

interest.

        M.      Award the Commission its costs of this action.

JURY TRIAL DEMAND

        The United States Equal Employment Opportunity Commission requests a jury trial on all questions of fact raised by its complaint.

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington, D.C.

Catherine L. Eschbach
Acting General Counsel

Christopher Lage
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

s/Debra M. Lawrence
Debra M. Lawrence
Regional Attorney

s/Kate Northrup
Kate Northrup
Assistant Regional Attorney

s/Taylor Hilton
Taylor Hilton (Bar No. P84560)
Trial Attorney
United States Equal Employment
Opportunity Commission
Cleveland Field Office
Anthony J. Celebrezze Federal Building
1240 E. 9th Street, Suite 3001
Cleveland, OH 44119
taylor.hilton@eeoc.gov
Telephone:    216-334-6424
Facsimile:    216-522-7395

Dated:  December 29, 2025